CAROLINE D. PRATT and her Husband, Appellants, v. THE HOLMES STREET RAILWAY COMPANY *et al.,* Respondents.

Kansas City Court of Appeals, March 7, and April 4, 1892.

1. **Kansas City:** GRADE OF HOLMES STREET: BELT LINE ORDINANCE. A plane extending from the grade of Nineteenth street, seventy-seven feet above the city directrix, to the grade of Twentieth street as established by the Belt Line ordinance, eighty-seven feet above the city directrix, describes the grade of Holmes street between these two streets.

2. **Streets:** CHANGE OF GRADE: DAMAGE: ESTOPPEL. The raising of the grade of a street so that the surface thereof shall be above the abutting property of the plaintiff, which had been improved with reference to the original grade, would entitle plaintiff to recover for any resulting damage to his property; but where the plaintiff, as in this case, besought the defendant to grade the entire street to the then established grade defendants are not liable for the resulting damages.

3. ————: RULE TO DETERMINE GRADES BETWEEN STREETS. As a matter of law the grade of an intersecting street between two adjacent parallel streets bounding the same block is a true plane between the elevations of the two parallel streets.

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*Chas. E. Pratt, W. J. Ferry* and *Frank Hagerman,* for appellants.

(1) As was conceded below, and will undoubtedly be conceded here, appellants had a case unless the respondents graded the street to the then established grade as petitioned. *Sheehy v. Railroad*, 94 Mo. 574. (2) By established grade is meant that fixed by the records of the council. *Kepple v. Keokuk*, 61 Iowa, 653. (3) The grade of the street in front of plaintiffs' property, as established by ordinance number 8436, approved March 20, 1873, and number 20513, approved February 8, 1881, was a plane drawn from a height of seventy-seven feet at the south line of Nineteenth street to eighty-three feet at the north line of Twentieth street. This subject is exhaustively considered in Sutherland on Statutory Construction, secs. 307, 308, 309. (4) Considering the Belt Line ordinance, number 22948, in the light of the rules of law just stated, there can be no question but that we correctly construe it. However, as an independent, open question, there is no doubt about its meaning. It is to be presumed that all parts are intended to harmonize (Sutherland on Statutory Construction, secs. 215, 325); and effect must be given to every part of the ordinance (secs. 239, 240), and inconsistent provisions must be harmonized if possible (secs. 239, 260). (5) Now, respondents' whole claim must rest upon the idea that the Belt Line ordinance changed the grade of Holmes street at the north line of Twentieth street, and that this necessarily changed the plane from that point. This claim is based upon *Conklin v. Keokuk*, 73 Iowa, 343. But, as we have seen, the grade was not changed by the Belt Line ordinance at the north line of Twentieth street; so the claim is not tenable. (6) When one ordinance fixed a grade at the north line of Twentieth street and another fixed it at

the south line, no grade was established between these points. This was expressly decided in *Dorland v. Bergson*, 78 Cal. 637; s. c., 21 Pac. Rep. 537. The result is that, until the Belt Line ordinance was passed, there was no grade of Holmes street across Twentieth street; but when such ordinance was passed the grades as theretofore established at the north and south lines of Twentieth street were made to connect by planes meeting at the level of the railroad tracks by such an approach as was reasonably practicable.

*Karnes, Holmes & Krauthoff*, for respondents.

(1) Contrary to the contention of counsel for appellants, the Belt railway ordinance established the grade of both Holmes and Twentieth streets at their intersection for their full width at eighty-seven feet above the city directrix, and not simply so much of Twentieth street as constituted the roadbed of the railway. Ordinance, sec. 3. (2) But the grade of Holmes street was raised at Twentieth street by the very terms of the Belt railway ordinance itself. (3) Since this brief was printed, certain interlineations have been made in the brief for appellants at pages 27, 31, 32. Those interlineations in effect admit away appellants' position, because they thus concede that by the Belt railway ordinance the grade of Holmes street north of Twentieth street was changed, at least so far as to require the building of a practicable approach to the new grade of Twentieth street as raised and established by that ordinance. How many feet will this court say that, by the requirements of the Belt railway ordinance, such practicable approach should be extended north from Twentieth street along Holmes street? Any change whatever wrought in the grade of Holmes street by that ordinance being conceded, there

can be no escape from our contention that the change so wrought extended north all the way from Twentieth street to the next established elevation, which is the south line of Nineteenth street. *Conklin v. Keokuk*, 73 Iowa, 343, 348; *Gafney v. San Francisco*, 72 Cal. 146, 152. (4) If what we have said is sound, the established grade of Holmes street in front of Mrs. Pratt's property was correctly assumed by the respondents to be a plane from an elevation of seventy-seven feet above the city directrix at the south line of Nineteenth street to an elevation of eighty-seven feet at north line of Twentieth street. As a matter of law the grade of an intersecting street between adjacent parallel streets bounding the same block is a true plane between the elevations of the two adjacent parallel streets. *Conklin v. Keokuk*, 73 Iowa, 343, 348; *Gafney v. San Francisco*, 72 Cal. 146, 152. The case of *Dorland v. Bergson*, 78 Cal. 637, cited by counsel for appellants, neither contravenes the above proposition, nor is it authority for the proposition to which it is cited. (5) The cable railway was built and the street graded precisely as contemplated and intended by Mrs. Pratt, and hence she cannot complain.

SMITH, P. J.—This is an action by plaintiffs for damages alleged to have been sustained by their property at the northeast corner of Twentieth and Holmes streets in Kansas City from the building of defendant's cable railway and grading of the last-named street.

Plaintiffs and others owning property on Holmes street petitioned the defendant to construct and operate a street railway on that street to be run by endless cable from Fifteenth street to the southern boundary of Kansas City, and proposed to procure for the defendant a franchise for that purpose, provided they would "grade the entire street to established grade."

Accordingly the franchise was procured, and the grading was done and the street railway built and put in operation.

Plaintiffs' property is situated on the north side of Twentieth street. The grade of Holmes street was originally established by ordinance, number 8436, approved March 20, 1873, from Independence avenue to the north line of Twentieth street, and by ordinance, numbered 20513, approved February 8, 1881, from the south line of Twentieth street to the southern city limits. By those two ordinances the grade of Holmes street at the north and south lines of Twentieth street was established at eighty-three feet above the city directrix, and so remained until the passage of the so-called Belt railway ordinance, approved August 19, 1882. Holmes and Twentieth streets intersect each other at right angles, and this Belt railway ordinance raised the grade of Twentieth street between the east and west lines of Holmes street from eighty-three feet to eighty-seven feet above the city directrix, and provided specifically that *" the intersections shall be deemed to be the intersections of the north and south lines of Twentieth street with the east and west lines of other or cross streets and avenues mentioned. Said intersection points shall be connected with true planes between each two adjacent points, which planes shall be the grade of Twentieth street."* The ordinance makes the following further provisions with respect to the grades of the cross or intersecting streets: "The establishment of grade aforesaid shall not be deemed establishing grades of streets, avenues and alleys crossing said Twentieth street. The railroad of said Kansas City Belt railway shall be laid on Twentieth street with *upper surfaces* of the rails on *the grade so established.* The grade of the streets hereinafter mentioned *shall connect, crossing Twentieth street* either at grade, above grade or below grade of such

railroad, at all the streets or avenues mentioned in this section, as follows, to-wit: "Woodland avenue, over the grade of the road; Forest avenue, under the grade of the railroad; *Holmes street at the grade of the railroad.*" The cable railway ordinance was approved July 3, 1882. It is conceded that the cable railway of defendants was built and Holmes street was graded on a plane from the established grade of Holmes street at the south line of Nineteenth street to the elevation of the north line of Twentieth street as established by the Belt railway ordinance.

After the introduction of evidence by the plaintiffs, tending to show the facts which we have stated, the defendants objected to the introduction of any further evidence upon the ground that under the petition and ordinances the defendant had simply done what it was asked by the plaintiffs to do, which objection was sustained, plaintiffs duly excepting thereto.

The plaintiffs on account of the rulings of the court took a nonsuit with leave to set the same aside. And after an unsuccessful motion for that purpose they prosecuted their appeal to this court.

I. Whether the judgment which is drawn in question by the appeal shall be affirmed or reversed, depends upon the construction of section 6 of the ordinance, granting defendants' franchise, which requires that wherever Holmes street has not been graded the same shall be "graded to the established grade" the full width thereof. What was the "established grade" to which the street was to be brought at the point where it was intersected by Twentieth street? By said ordinances of March 20, 1873, and February 8, 1881, the grade of this street at the north and south lines of Twentieth street was established at eighty-three feet above the city directrix. Whether or not this state of the ordinances left that part of the street between the

north and south lines of Twentieth street without any established grade, we think, is immaterial.

By the third section of the Belt railway ordinance, approved August 19, 1882, it was provided that the grade of *Twentieth* street in said city is established and shall be elevated above the city directrix, at the intersection of Holmes street, eighty-seven feet. It further provides that the intersections therein mentioned shall be deemed the intersections of *north and south lines of the cross streets.* Said intersection points shall be connected with true planes between each two adjacent points which planes shall be the grade of Twentieth street. Four "intersection points" are thus fixed by the ordinance on the intersecting boundary lines of the two crossing streets, located at the four corners of a parallelogram, and when the adjacent points are connected by true planes as required by the ordinance we have the plane which the ordinance designates as the grade of Twentieth street, which is a true plane the full width of Twentieth street, extending from the east to the west line of Holmes street at an elevation of eighty-seven feet above the city directrix. Since that part of Holmes which lies between the north and south lines of Twentieth street is precisely the same as that part of Twentieth street which is embraced within the east and west lines of Holmes street, it necessarily follows that an ordinance which establishes the grade of Twentieth street as a plane extending its full width between the east and west lines of Holmes street, likewise establishes the grade of Holmes street, as a plane extending its full width between the north and south lines of Twentieth street.

By the said provisions of the Belt railway ordinance the grade of Holmes street, between the north and south lines of Twentieth street, was raised from eighty-three to eighty-seven feet above the city direc-

trix. Thus was the original grade of Holmes street where the north and south lines of Twentieth street cross it, as established by the ordinance of 1873, and 1881, disestablished by the passage of the Belt railway ordinance. The grade at the north line of Twentieth street was raised four feet above the original grade. A plane extending from the grade of Nineteenth street, seventy-seven feet above the city directrix, to the grade of Twentieth street as established by the Belt Line ordinance, eighty-seven feet above the city directrix, describes the grade of Holmes street between these two streets. The city under the constitution was authorized to make this change of grades, and, if the change caused the abutting property to be damaged, there would be a legal liability therefor. *Sheehy v. Railroad,* 94 Mo. 574.

The grading of Holmes street to the grade established by the Belt railway ordinance necessarily raised the surface of that street above the abutting property of the plaintiffs, which had been improved with reference to the original grade on Holmes street, and if damages resulted to the plaintiffs' property in consequence of the change of the grades, as no doubt was the fact, they would be entitled to recover therefor, were it not that they besought the defendants by their petition to grade the entire street to "the *then* established grade" of the street, as we have seen, where intersected by Twentieth street, prescribed by the Belt railway ordinance. The defendants graded the street to this grade, and for the consequence resulting therefrom to the plaintiffs' property for the reasons just stated defendants are not liable.

The contention of the plaintiffs, that the Belt railway ordinance provided that the grade of Holmes street should connect at the *level of the railroad track* crossing it on Twentieth street, cannot be sustained for the very reason that the grade of Twentieth street was

established for its *full width*, and not merely for the width of the railway track thereon. Nor do we think, that under the ordinances of 1873, and 1881, that there was no provision made for a grade in that part of Holmes street, between the north and south line of Twentieth street; but if so then provision was made for the establishment of a grade there by the subsequent passage of the Belt railway ordinance. We think that the Belt railway ordinance had the effect to accomplish a change of the grade of Holmes street on that part thereof between the north and south lines of Twentieth street, and that a plane extending from the north line of the latter, eighty-seven feet above the city directrix, to the next parallel street, was the grade between these streets.

It is expressly provided in the ordinance of March 20, 1873, establishing the grade of Holmes street from Independence avenue to Twentieth street, that "all adjacent grade points as herein established shall be connected by true planes." Raising the elevation to eighty-seven feet at the north line of Twentieth street did not, of course, affect that provision, but left it in full force applicable to the new grade the same as the old. As a matter of law the grade of an intersecting street between adjacent parallel streets, bounding the same block, is a true plane between the elevations of the two adjacent parallel streets. *Conklin v. Keokuk*, 73 Iowa, 343, 348; *Gafney v. San Francisco*, 72 Cal. 146, 152. The plane fixed by the Belt railway ordinance on Holmes street, between the north and south lines of Twentieth street, connected the planes north and south of it and thus supplied the break, if any, in the continuity of the grade of Holmes street.

We can discover nothing in any of the ordinances to justify the conclusion that it was intended that the grade of Holmes street where crossed by Twentieth

street should be elevated to eighty-seven feet for the width only of the Belt railway track, and that the plane north to the grade of Nineteenth street should begin and extend from the railway track instead of from the north line of Twentieth street, to the grade of Nineteenth street. Nor do we see any ground for the contention that the Belt railway ordinance contemplated that the old grade on the north line of Twentieth street should remain undisturbed, and that from the grade of that line to the level of the track of the Belt railway there should be constructed such an approach as was reasonably practicable. It is unreasonable to suppose the city government designed by the passage of the Belt railway ordinance to authorize anything of the kind. We must think when the defendants graded Holmes street and constructed the roadbed of their railway on a plane from the grade of Nineteenth street seventy-seven feet above the city directrix to the grade of Twentieth street as fixed by the Belt railway ordinance eighty-seven feet above the city directrix, that defendants thereby brought said street to the "established grade," and that this complied with the request of the plaintiffs and the requirements of the ordinance authorizing the same.

It follows, therefore, the circuit court did not err, and that its judgment should be affirmed. All concur.

