LIZZIE TAYLOR et al., Respondents, v. CITY OF JACK-
SON.

St. Louis Court of Appeals, March 27, 1900.

1. Damages to City Property: ESTOPPEL: EVIDENCE. In the
case at bar it is held that the evidence was insufficient to make out
a case of estoppel.

2. ———: ———: MEASURE OF DAMAGES. Property in a city or
town can only be valuable for residence or business purposes, and
if the plaintiff's property was diminished in value for these pur-
poses, its market value was necessarily diminished.

3. Witnesses: OPINION OF WITNESSES. As a general rule wit-
nesses must state facts. There are exceptions to this rule, and one
of them is that where the subject of inquiry is so indefinite and
general in its nature as not to be susceptible of direct proof, the
opinions of witnesses are admissible. If the witness has had the
means of personal observation and the facts and circumstances upon
which he bases his conclusions are incapable of being detailed so in-
telligibly as to enable any one but the observer himself to form an
intelligent conclusion from them, he may add his opinion.

VOL. 83 app—41

Appeal from the Cape Girardeau Circuit Court.—*Hon.*
*Henry C. Riley,* Judge.

AFFIRMED.

*T. D. Hines* for appellant.

(1) The defendant is not liable in damages for reducing the surface of Kate street along the south end of plaintiff's lot, because the work was not done by virtue of an ordinance. Maudlin v. City of Trenton, 67 Mo. App. 455; Gehling v. St. Joseph, 49 Mo. App. 432; Werth v. Springfield, 78 Mo. 109. This is true, even though the work was done under the supervision of a committee appointed by the board of aldermen of the city. Thompson v. Boonville, 61 Mo. 282. Beatty v. St. Joseph, 57 Mo. App. 251. (2) The court therefore erred in admitting over appellant's objection any testimony concerning the cost of readjusting respondents' lot on the south by building a stone wall there. And this was especially true after "all reference to Kate street" had been stricken out of the petition. (3) It is settled law in this state that: "All who join in a petition for the establishment of a proper grade of a street are estopped to claim damages from the city for doing that which they asked to have done." Cross v. City of Kansas, 90 Mo. 13; Vaile v. City of Independence, 116 Mo. 333; 2 Herman on Estoppel, sec. 1221. (4) ·And this is true, even though the petitioner be assured by the city engineer at the time of signing the petition that there would be "no cuts" along his property; and even though the petition did not state "any particular grade" prayed for therein. Vaile v. Independence, *supra.* The testimony clearly shows that W. W. Taylor, for himself and his wife, Lizzie Taylor, by and through her constituted agent, signed a petition to the board

of aldermen of appellant, praying it to "open, grade and gravel" Third East street its full length, which petition was filed November 9, 1894, with appellant. The testimony further shows that there was a deep hollow just south of respondents' property on that street, which required a fill variously estimated by the witnesses at from 300 to 450 feet long and from eight to twelve feet high at the deepest point · of the hollow. That this was a natural hollow, crossing Third East street at that point. At the time of signing the aforesaid petition to the board of aldermen, asking to have that street "opened, graded and graveled," respondents must have known and did know that the hollow would have to be filled, and that a cut was necessary to fill it. From the fact that respondents' lot was just at the brow of the hill above the hollow, they must have known, and did know, that a cut along their property was absolutely necessary. The law did not and does not require such a petition on the part of property owners; it must then be taken that this was the chosen way of informing the board of aldermen what were respondents' wishes in the matter of "opening, grading and graveling that street." (5) This court has held that, where a man urged members of a city council of a municipal corporation to build a certain bridge without regard to its height, well knowing that the bridge would necessitate the building of approaches in front of his property, he was thereby estopped from claiming damages arising from the construction of the bridge and approaches should the bridge and approaches be built by the city. Justice v. Town of Lancaster, 20 Mo. App. 55; Bigelow on Estoppel [3 Ed.], 578. "*Volenti non fit injuria.* The principle is that if A, by whatever means, persuades or induces B to take a certain course of action, from which action injury results to A, A can not recover damages for such injury from B because he has consented to it and assisted in producing it." Murphy v. St. L. Type Foundry, 29 Mo. App. 547. "No question of tech-

nical estoppel is involved here," said Judge Henry; "but the question is, shall one recover damages voluntarily incurred by himself?" Railroad v. Farrell, 76 Mo. 190. (6) The court committed error in allowing witness Abernathy and others, over the objection of appellant, to state their opinions as to respondents' property being damaged and how much. It is the province of the witnesses to state facts and not give opinions. Hurt v. Railroad, 94 Mo. 260; Belch v. Railroad, 18 Mo. App. 80.

*Wilson Cramer* and *W. H. Miller* for respondents.

(1) Appellant's first contention is that it is not liable for damages for reducing the grade of Kate street under the circumstances of this suit and cites authorities on this proposition. It is a sufficient answer to this to say that all reference to Kate street was eliminated from the petition as well as from the instructions given. No reference to Kate street is in the testimony except what is made necessary by cutting Third East street. Respondents conclude that there can be no error found in that particular. (2) Appellant labors long and earnestly on the estoppel theory of the defense. It seems to us that the elements of estoppel are entirely wanting. Respondent's husband did not petition for a grade the result of which would be a virtual confiscation of his wife's property; and the moment it was ascertained that such was the established grade, the city authorities were plied with remonstrances. Yet, in the face of this, appellant's counsel, at page 65 of his abstract, says that respondents lay by "many months without uttering a note of warning," etc. In the face of the record this statement is a gratuity and without foundation in fact. The case of Vaile v. The City of Independence, 116 Mo. 333, is not in point and does not apply to the facts in this case. The jury was certainly ad-

vised as to the measure of damages in this case, and a reversal should not be had upon a mere technicality, unless clearly prejudicial.

BIGGS, J.—The defendant is a city of the fourth class. Section 96 of the act of the legislature passed April 11, 1895 (Laws of 1895, page 87), conferred on the board of aldermen of such cities the power to pass ordinances for the opening and improvement of streets and providing that the damages sustained by any property owner by reason thereof should be ascertained in like manner as provided in the same act relating to compensation for private property taken for public use, that is by the appointment of commissioners to assess the damages, etc. The plaintiff, Lizzie Taylor, the wife of her co-plaintiff, W. W. Taylor, is the owner of a lot situated at the intersection of Third East street and Kate street in said city. On the third day of February, 1896, the board of aldermen of the city passed a general ordinance establishing a system of grades for the streets of the city. According to this ordinance a cut of seven or eight feet on Third East street in front of Mrs. Taylor's property was required. On January 15, 1897, an ordinance was passed to improve Third East street in accordance with the established grade. On April 15, 1897, the city let the contract for the work. The work was commenced and finished in October, 1898. No attempt was made by the city authorities to have the damages assessed for the opening of the street. On the twenty-third day of November, 1898, the plaintiff brought the present action to recover the damages which they claim was done to Mrs. Taylor's property by reason of the grading of the street. Besides a general denial, the answer contains a plea in the nature of an estoppel to the effect that the plaintiffs had signed a petition asking the city council to grade and improve the street. The jury returned a verdict in favor

of the plaintiffs for four hundred and fifty dollars, upon which a judgment was entered. The defendant has appealed and complains of the admission and exclusion of evidence, and that the circuit court committed error as to the instructions.

In the original petition damages were claimed for the grading of Kate street, but for some reason the claim was abandoned at the trial, and that portion of the petition referring to Kate street was stricken out. The instructions also directed the attention of the jury solely to the damages sustained on account of the excavation on Third street. Reference was made by some of plaintiff's witnesses to the change made in Kate street, but the references were incidental merely. The defendant complains of this. We think that these statements were nonprejudicial. It is improbable that the jury misunderstood the issues.

We are of the opinion that defendant's evidence was insufficient to make out a case of estoppel, hence the eighth instruction asked by it which presented that issue, was properly refused. The evidence touching the matter is to this effect: On the eighth day of November, 1894, a petition was presented to the city council asking for the improvement of Third East street. This petition was signed by W. W. Taylor as agent of his wife. At that time the grades of the streets had not been established. Mrs. Taylor had made the improvements on her lot to correspond with the natural surface of the adjacent streets. In February, 1896, a general ordinance was passed fixing the grades of all the streets in the city. In January, 1897, another ordinance was adopted for the improvement of Third East street according to the established grade. This work was let April 15, 1897, but was not begun until October, 1898. As soon as plaintiffs learned of the proposed cut in front of their premises and prior to the letting of the work, they presented

to the city council a written remonstrance against the improvement, and after the letting, to wit, in May, 1897, they again remonstrated against it. Notwithstanding these remonstrances and after a delay of more than eighteen months after the contract for the work, the defendant ordered the work to be done. As to its facts this case is unlike the cases of Vaile v. The City of Independence, 116 Mo. 333, and Cross v. The City of Kansas, 90 Mo. 13. In the Vaile case the plaintiffs signed a petition asking the municipal authorities to grade and pave a certain street in front of their premises. In compliance with the petition the city council passed an ordinance establishing the grade and authorizing the proposed improvement. The work was let and was completed without protest from the plaintiffs. Three years afterwards they became dissatisfied with the grade and brought their suit for damages. The supreme court rightly held that they were estopped to complain as the improvement was made at their request.

In the Cross case the plaintiff petitioned for the work to be done just as it was done. He witnessed the completion of the work without complaint and afterwards sought to recover damages for the change of the grade in the street because the requisite number of property owners did not sign the petition for the improvement. Applying the maxim *volenti non fit injuria* the supreme court decided that the plaintiff could not recover.

The measure of damages as declared by plaintiffs' instructions was the difference "between the value of the property before the grading and cutting of the street and its value immediately after the completion of the cut," etc. In its instruction the court told the jury that in estimating the damages they must decide whether or not "the real estate with the improvements thereon was worth less for any purpose after the excavation of the street than it was imme-

diately before and the difference should be the amount of the verdict." In the fifth instruction asked by the defendant the jury were instructed that the verdict should be for defendant unless the jury found "that there was diminution in the market value of plaintiffs' property resulting from the cutting down to grade the surface of Third East street along their said property." In addition to these instructions the defendant asked the ninth, which the court refused, to wit:

"The court instructs the jury that the matter for your determination is, what damage, if any, was done to plaintiffs' property by reducing the grade of Third East street along said property and in arriving at this you must decide whether or not the real estate, with improvements thereon, was worth less for any purpose in the market, immediately after the grading, than it was immediately before. If you believe from the evidence that immediately after the grading, in its then condition, the said property would not have sold in the market for as much as it would just before the change of grade, and that such depreciation was the result of such change of grade, then you should find for the plaintiffs and assess their damages at the amount of such depreciation. If, however, you should believe from the evidence that the reduction of the surface of Third East street to grade as aforesaid was a special benefit to plaintiffs' property, and that such special benefit equalled or exceeded the damages, then plaintiffs are not entitled to recover and your verdict should be for the defendant. In other words, although the change of grade may have been an inconvenience to the enjoyment of plaintiffs' property, and may have necessitated an expenditure of money to render it fit for occupancy and to provide a suitable approach to the buildings and property, and, if when such repairs, approaches and improvements were made after said grading, the property was not even then so well adapted for residence and business purposes as before

the grading, yet if you find from the evidence, that because of any special benefits derived from the grading the whole property was worth as much or more in the market than before, that such special benefits equalled or exceeded such damages and inconveniencies, then your verdict should be for the defendant."

This instruction seems to us to be incorrect, in that the jury is told that even though the plaintiffs' property was not so well adapted for residence or business purposes after the grading as it was before, yet if by reason of special benefits it was rendered more valuable in the market and that this enhancement in value exceeded the damage done, then the plaintiffs were not entitled to recover anything. If the property was rendered less valuable both for residence and business purposes, we can not conceive how its value could have been increased. Property in a city or town can only be valuable for residence or business purposes, and if the plaintiffs' property was diminished in value for these purposes its market value was necessarily diminished.

As a general rule witnesses must state facts and not give their opinions. There are exceptions to the rule, and one of them is stated in Eyerman v. Sheehan, 52 Mo. 221, to the effect that "where the subject of inquiry is so indefinite and general in its nature as not to be susceptible of direct proof, the opinions of witnesses are admissible. If the witness has had the means of personal observation and the facts and circumstances upon which he bases this conclusion are incapable of being detailed so intelligibly as to enable any one but the observer himself to form an intelligent conclusion from them he may add his opinion." In the present case the court accepted the opinions of plaintiffs' witnesses who were acquainted with plaintiffs' property both before and after the improvement as to the damage done to the property. We think that this ruling was clearly right. It

would have been difficult to describe the condition of the property before and after the grading of the street so as to impart to the jury accurate knowledge of the subject.

There are other exceptions which we do not care to discuss as the result would not be changed. We will therefore affirm the judgment. All concur.